I,DUFRESNE, Judge.
The child’s biological father, ENL, appeals the judgment of the juvenile court which terminates his parental rights relative to the minor child, SCD.
The biological mother, PAWD, was married to SMD at the time of the conception and birth of SCD; however, she engaged in an extra-marital affair with ENL around the time of the conception of the child. PAWD informed ENL of her pregnancy in February of 1998, although she was not certain at that time who was the father of the child. In July of 1998, PAWD underwent amniocentesis and her husband submitted to DNA testing. Through the DNA testing, it was determined that her husband, SMD, was not the biological father of the child. PAWD informed ENL of this finding and further advised him that she needed $800.00 because she wanted to have an abortion. ENL gave PAWD a check for $800.00 but then stopped payment. Obviously, the abortion was never accomplished, and in mid-September of 1998, PAWD contacted Donna Breaux, the program director for the Volunteers of America, to discuss the possibility of adoption. At their meeting, PAWD indicated that she wanted to proceed | ¡.with an adoption plan. She thereafter selected an adoptive family and started having interactions with them.
On October 25, 1998, PAWD gave birth to SCD. ENL was advised of the birth, and although he went to the hospital with his mother, he did not visit the baby. Thereafter, on October 30, 1998, PAWD executed a voluntary act of surrender, whereby she released the infant to the Volunteers of America for the purpose of placement and adoption. This act of surrender was filed in the Jefferson Parish Juvenile Court on November 2, 1998. Donna Breaux informed ENL that PAWD executed an act of surrender, and advised him of his rights relative to the child. Following some discussion with Ms. Breaux, ENL decided to undergo DNA testing. The results of the test confirmed that he was, in fact, the father of the child. Throughout Ms. Breaux’ contact with ENL and despite the results of the DNA testing, ENL indicated that he also wished to surrender his parental rights but wanted visitation with the child. Ms. Breaux advised him that “open adoption” was not recognized in Louisiana, and thus, once the child was adopted, he would not be guaranteed any visitation. Being uncomfortable with this idea, ENL took steps to identify and locate the prospective adoptive parents through a friend. The prospective adoptive mother was contacted by ENL’s friend and a meeting was ultimately scheduled. When ENL found out that *1060 it was going to be impossible to surrender his parental rights with certain stipulations insuring visitation with the child, he changed his mind about signing the surrender. He was then served with the notice of the filing of the surrender, in accordance with the requisites set forth in the Children’s Code. ENL timely filed an opposition to the adoption on February 24, 1999. In accordance with LSA-Ch.C. art. 1137, the matter was thereafter set for hearing.
^Following a hearing, the juvenile court judge found that ENL, the biological father of SCD, had failed to establish his parental rights in accordance with LSA-Ch.C. art. 1138. Having made this finding, the judge ordered that all parental rights and obligations of ENL relative to the child, SCD, be terminated in accordance with LSA-Ch.C. art. 1138(D). From this judgment, ENL now appeals. He contends that the juvenile court judgment constituted reversible error because he, in fact, acknowledged the child and further proved that he is a fit parent. ENL also argues that he was prevented from substantially committing to his parental responsibilities by PAWD as well as the Volunteers of America but nonetheless managed to demonstrate numerous acts of commitment. In addition, ENL contends that he is now willing and able to assume legal and physical care of SCD. For the reasons which follow, we affirm the judgment of the juvenile court.
LSA-Ch.C. art. 1138 provides as follows:
A. At the hearing of the opposition, the alleged or adjudicated father must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child.
B. Proof of the father’s substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother’s pregnancy or the child’s birth, that he either:
(1) Provided financial support, including but not limited to the payment of consistent support to the mother during her pregnancy, contributions to the payment of the medical expenses of pregnancy and birth, or contributions of consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that he is now willing and able to assume legal and physical care of the child.
(2) Was willing to provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.
C. The child and the legal custodian may offer rebuttal evidence |4limited to the issues enumerated in Paragraphs A and B of this Article.
D. If the court finds that the alleged or adjudicated father has failed to establish his parental rights, it shall decree that his rights are terminated.
E. If the court finds that the alleged or adjudicated father has established his parental rights, the court shall declare that no adoption may be granted without his consent and shall order the child to be in his legal custody. The court may also order the alleged or adjudicated father to reimburse the department, or the licensed private adoption agency, or other agency, or whoever has assumed liability for such costs, all or part of the medical expenses incurred for the mother and the child in connection with the birth of the child.
Thus, in order to establish his parental rights under the statutory scheme, the alleged father must acknowledge that he is the father of the child. He must also prove that he has manifested a substantial commitment to the child and that he is a fit parent of the child. It is clear that the *1061 burden of proof is upon the alleged father to show the preservation of his parental rights by proving these interrelated elements by a preponderance of the evidence. In re P.B.S., Jr., 97-655 (La.App. 5 Cir. 11/25/97), 705 So.2d 220. We must now look at the elements set forth in LSA-Ch.C.art. 1138 and determine whether the alleged father met his burden of proof.
The first requirement is that the alleged father must establish his parental rights by acknowledging that he is the father of the child. We find, as did the juvenile court judge, that this requirement was met. ENL executed an authentic act of acknowledgment on March 12, 1999, and caused it to be filed in open court on the date of the opposition hearing.
We will next consider whether the alleged father proved that he is a fit parent. Parental fitness is defined in LSA-Ch.C. art. 1103(5) as follows:
(a) That a parent has not abused the child. For purposes of this Subpara-graph, abuse means the infliction of physical or mental injury which causes deterioration to the child, sexual abuse, exploitation, or [^¡overworking of a child to such an extent that his health or moral or emotional well-being is endangered.
(b) That a parent has consistently offered to provide reasonably necessary food, clothing, appropriate shelter, or treatment for the child. For purposes of this Subparagraph, treatment means medical care or other health services provided in accordance with the tenets of a well-recognized religious method of healing with a reasonable, proven record of success.
(c) That a parent suffers from no medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse, or chemical dependency which makes him unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.
(d)Viewed in its entirety, the parent’s past or present conduct, including his criminal convictions, would not pose a risk of substantial harm to the physical, mental, or emotional health of the child.
The first part of the definition of an unfit parent, subsection (a), is clearly inapplicable to ENL who has had no contact with the child. Subsection (b) is also arguably inapplicable to a parent, like ENL, who has not yet had an opportunity to develop a relationship with his child, although we note that after ENL was advised of the mother’s surrender, he made no effort and expressed no desire to provide any of these necessities for his child. Regarding subsection (c), ENL offered undisputed testimony that he had no medical or emotional illness or deficiency nor did he have a substance abuse problem, which would prevent him from caring for the child. Moreover, regarding subsection (d), ENL testified that he had one misdemean- or conviction for disturbing the peace; however, there was no other evidence to suggest that ENL’s conduct would pose a risk of substantial harm to the child. Thus, based on these factors, we find that ENL sufficiently proved that he is a fit parent, in accordance with LSA-Ch.C. art. 1138.
We finally turn our attention to whether ENL proved that he has | ^manifested a substantial commitment to his parental responsibilities. The juvenile court judge found that ENL failed to meet this burden of proof. The judge issued extensive reasons for making this determination. We agree with the trial judge’s reasons for judgment and briefly note the following factors which indicate ENL’s lack of commitment to his parental responsibilities. ENL did not pay or offer to pay any expenses related to the pregnancy or birth of the child, nor did he offer any support after the child was born, despite the fact that he was employed and had *1062 adequate means to provide support. The only check issued was one for $800.00 when PAWD indicated that she wanted to have an abortion. Although ENL claims that he stopped payment on the check because he had a guilty conscience and wanted to save the baby’s life, there is conflicting evidence in the record which suggests that he stopped payment on the check because he heard that she had changed her mind about the abortion. It is further important to note that after the conversation between ENL and PAWD about her decision not to have the abortion, ENL had no contact with PAWD throughout the rest of her pregnancy. PAWD informed ENL, through his mother, when the baby was born. Although ENL and his mother went to the hospital, ENL did not actually see the baby because he was afraid that there would be a confrontation if he went into PAWD’s room. Also, there was no testimony to suggest that ENL made any request of the hospital staff to facilitate a visit with the child.
Following the baby’s birth, Donna Breaux of the Volunteers of America, contacted ENL, explained his rights to him, and further explained that the mother had surrendered the child for adoption. ENL expressed a concern that the child was not actually his, at which time Ms. Breaux offered to provide him information for DNA testing. Even after the testing ^confirmed that he was the biological father, ENL still expressed his intent to proceed with the surrender. We acknowledge ENL’s efforts to meet with the adoptive parents; however, his main concern was that he would be denied visitation with the child after the child was adopted. ENL still wanted to surrender the child but with the assurance that he would be guaranteed some sort of visitation. Despite his apparent desire for some contact with the child, there is no evidence in the record to suggest that ENL had any desire or plan for taking custody of the child or for raising and supporting the child.
Based on these factors as well as the more extensive reasons for judgment given by the trial judge, we find that ENL failed to establish a substantial commitment to his parental responsibilities. Accordingly, we affirm the judgment of the juvenile court judge which terminated all parental rights and obligations of ENL relative to the minor child, SCD, in accordance with LSA-Ch.C. art. 1138(D).

AFFIRMED.