865 So.2d 317 (2004)
In re Edgar McLARRIN and Charlotte McLarrin applying for Private Adoption of E.K.E. and O.L.G., Plaintiffs-Appellees.
No. 38,616-JAC.
Court of Appeal of Louisiana, Second Circuit.
February 4, 2004.
*319 Evelyn Denise Kelly, for Appellant.
John Gates Spires, Mer Rouge, for Minor O.L.G.
Scott L. McElroy, for Appellees.
Before BROWN, GASKINS and MOORE, JJ.
MOORE, J.
Petitioners obtained legal custody of O.L.G. and subsequently petitioned to adopt the minor child. The unwed biological father of O.L.G. opposed the adoption and sought to establish his parental rights. Functioning in its capacity as a juvenile court, the district court found that the biological father had failed to show that he manifested a substantial commitment to his parental responsibilities. The court approved the adoption and terminated the father's parental rights. He appeals. We affirm.

Facts and Procedural History
Proceedings in this matter began on February 22, 2002 when Edgar Tom McLarrin, age 64, and his wife, Charlotte McLarrin, age 51, filed an Application for Approval of Adoptive Placement of two minor children, E.K.E. and O.L.G. The application alleged, inter alia, that the children have lived with the applicants for approximately one year, and that the applicants have had legal custody of the children since July 13, 2001, pursuant to a court order. Attached to the application was a Voluntary Act of Surrender for Adoption ("Act of Surrender") executed by the mother of both children, M.E. Although the application involved two children of M.E., the instant appeal concerns only O.L.G.
O.L.G. was born on November 29, 1999, and was nearly 4-years-old at the time of trial. In the Act of Surrender, M.E. deposed that she was married at the time of birth or conception of O.L.G., but that her husband, the legal father of the child, was not the biological father of the child. She further deposed that, to the best of her knowledge, the alleged (biological) father had not acknowledged paternity formally or informally, and she did not know the identity of the biological father of O.L.G.
On October 23, 2002, the McLarrins filed a petition to adopt O.L.G. Petitioners alleged that the biological father of O.L.G. was unknown, and that the whereabouts of O.L.G.'s legal father was unknown. They asked the court to appoint an attorney to *320 represent M.E.'s husband, the legal father of O.L.G., and whose consent for the adoption is required by law. Petitioners asked the court to terminate the legal father's parental rights.
Petitioners alleged that they had made diligent efforts to determine the identity of the unknown biological father of O.L.G., and that the mother, M.E., does not know the identity of the father of the child. Attached to the petition were the following documents: (1) O.L.G.'s birth certificate, (2) a certificate from the Rapides Parish Clerk of Court's office certifying that the records contained no acknowledgment or legitimation by authentic act and no judgment of filiation relative to O.L.G., (3) a certificate from the Ouachita Parish Clerk of Court verifying that no formal acts of acknowledgment, legitimation or judgments of filiation had been filed, and (4) a document from the State Registrar certifying that no requests or applications for listing in a Putative Father Registry, relative to the birth of O.L.G., had been received to date.
On November 4, 2002, J.M., the alleged biological father of the child, (hereinafter "appellant" or "J.M.") opposed the adoption by filing in the above proceeding a Rule for Custody, in which he alleged that he is the natural father of O.L.G. and requested that the court award him legal custody of the child. Appellant denied the allegations in the McLarrin petition to adopt that alleged that the biological father was unknown. On the contrary, appellant alleged that M.E. previously attested under oath that appellant was the father. [M.E. and appellant executed an affidavit acknowledging appellant's paternity on June 13, 2001.] We also note that J.M. is the grandson of Edgar McLarrin, the prospective adoptive father in the petition to adopt.
A hearing on the petitioners' request for an interlocutory decree of adoption was held on December 4, 2002. The hearing resulted in an order for paternity testing to determine if the appellant could be excluded as the biological father of O.L.G. Some time in early 2003, the test results confirmed that appellant was the biological father of O.L.G.
Subsequently, on February 24, 2003, petitioners filed an Amended Petition to adopt O.L.G., now alleging that a valid acknowledgment of paternity executed by the appellant existed, and that genetic testing might not exclude the appellant as the biological father of O.L.G. Nevertheless, the petitioners alleged that the appellant had failed to visit, communicate, or attempt to communicate with O.L.G. in more than six months. Accordingly, petitioners alleged that appellant's consent to the adoption was not necessary. Additionally, petitioners alleged that the appellant did not have anything to do with the child for the first one and one-half years after her birth, and that he had little or no contact with O.L.G. after he acknowledged his paternity. In the alternative, the petitioners moved to terminate the appellant's parental rights under La. Ch. C. art. 1245, and asked the court to appoint their counsel as special assistant to the district attorney in the matter of the termination of parental rights.
The Amended Petition was met with dilatory exceptions of improper use of summary procedure and improper cumulation of actions. Apparently concluding that they were faced with the probable success of the exceptions, on May 27, 2003, the petitioners filed an amended petition alleging that the appellant's parental rights should be terminated under La. Ch. C. art. 1138 (instead of Art. 1245), and asked the court to appoint an attorney to represent O.L.G. in the matter if the court *321 deemed that the appellant's consent for the adoption is required.
The court appointed an attorney to represent O.L.G. The attorney answered the petition for adoption, denying all allegations for lack of sufficient information.
The appellant answered the amended petition, affirming the allegations that he had acknowledged paternity and further alleging that the paternity tests did not rule him out as the father of O.L.G. Appellant denied the allegations regarding his lack of contact with the child and pled his opposition to the adoption. Appellant alleged that he had maintained contact with the child on a regular and frequent basis since he learned that the child might be his in June of 2001. He claimed that he regularly and frequently contributed to the support and well-being of the child from September of 2001 to September of 2002 and that he saw the child on a regular and consistent basis after January of 2003, after obtaining a court order allowing his visits. He further alleged that it was in the best interest of the child that O.L.G. be placed in his custody.
Trial was set for October 8, 2003. On that day, the matter was taken up and tried and the evidence adduced. Ruling from the bench, the court concluded that the appellant did not carry his burden of proof under La. Ch. C. art. 1138. Specifically, the court found that the appellant had ample opportunity during M.E.'s pregnancy and after the birth of the child to demonstrate his support for the mother or the child, and he had failed to do so. Likewise, the court noted that appellant had failed to demonstrate his commitment through frequent and regular contact with the child until only recently. The court also found that J.M. did not establish that he was thwarted in any efforts to contact the child or to provide financial support. Finally, the court concluded that the appellant, who lived with his grandmother while working at Kentucky Fried Chicken for $5.40 per hour, was not willing and able to assume legal and physical care of the child.
On October 29, the court signed a judgment denying the opposition to the adoption by appellant and terminating his parental rights. Appellant filed this appeal.

Law
The interest of an unwed father in the children he has sired and raised is protected under the Due Process Clause. In re Adoption of B.G.S., 556 So.2d 545 (La.1990) (citations omitted). In cases where the father has not lived continuously with the child, his paternal interests are protected when he develops and maintains a substantial relationship with his child by accepting responsibility for the child's future. Id. (Citations omitted). This constitutional protection extends to unwed biological fathers of newborns: "[A] fully committed unwed father of a newborn child has a constitutionally protected interest in his opportunity to develop a mutually beneficial emotional or psychological bond with his child." Id. at 550, citing, Lehr v. Robertson, 463 U.S. [248] at 259-61, 103 S.Ct. [2985] at 2992-93, 77 L.Ed.2d [614] at 625-26 [ (1983) ]. (Citations omitted). The Lehr court characterized that commitment as follows:
When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "coming forward to participate in the rearing of his child,"... his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he `act[s] as a father toward his children.'....
The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity *322 and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development.
Lehr v. Robertson, 463 U.S. at 261-62, 103 S.Ct. at 2993, 77 L.Ed.2d at 626-27, quoting Caban v. Mohammed, 441 U.S. at 392, 389 n. 7, 99 S.Ct. at 1768, 1766 n. 7, 60 L.Ed.2d at 307, 305 n. 7 (emphasis added). "This interest does not come into existence or is soon lost, however, if the father is unable to demonstrate that he is fit and committed to the responsibilities of parenthood." In re Adoption of B.G.S., supra at 550. "[H]e must show that he has taken concrete actions to grasp his opportunity to be a father and that there is a potential for him to make a valuable contribution to the child's development." Id. Simply showing a biological relationship and fitness is not enough to sustain the father's interest. Id.
These precepts are now codified in Louisiana law and expressly stated in La. Children's Code Article 1138 governing hearings on opposition to a proposed adoption and the establishment of parental rights. Article 1138 delineates the showing that must be made to oppose an adoption and establish parental rights:
Art. 1138. Hearing of opposition to adoption; establishment of parental rights
A. At the hearing of the opposition, the alleged or adjudicated father must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child.
B. Proof of the father's substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother's pregnancy or the child's birth, that he either:
(1) Provided financial support, including but not limited to the payment of consistent support to the mother during her pregnancy, contributions to the payment of the medical expenses of pregnancy and birth, or contributions of consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that he is now willing and able to assume legal and physical care of the child.
(2) Was willing to provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.
C. The child, the mother of the child, and the legal custodian may offer rebuttal evidence limited to the issues enumerated in Paragraphs A and B of this Article. However, the primary consideration shall be, and the court shall accept evidence concerning, the best interests of the child.
D. If the court finds that the alleged or adjudicated father has failed to establish his parental rights, it shall decree that his rights are terminated.
E. If the court finds that the alleged or adjudicated father has established his parental rights, the court shall declare that no adoption may be granted without his consent. The court may also order the alleged or adjudicated father to reimburse the department, or the licensed private adoption agency, or other agency, or whoever has assumed liability for such costs, all or part of the medical expenses incurred for the mother and the child in connection with the birth of the child.
*323 Hence, the burden of proof is upon the claimant father to demonstrate that his parental rights should be recognized. This burden is three-fold, requiring that the claimant father (1) acknowledge paternity in open court, (2) prove his efforts to seize his parental "opportunity" interest, and (3) prove his present fitness for custody. In re Adoption of B.G.S., supra. The burden of proof is on the father to prove these three elements by a preponderance of the evidence. Matter of R.E. 94-2657, 94-2663 (La.11/9/94), 645 So.2d 205; In Re Adoption of S.C.D., 99-455 (La.App. 5 Cir. 9/28/99),742 So.2d 1058, writ denied, XXXX-XXXX (La.11/3/99) 748 So.2d 1144.
The standard of appellate review of judgments in these cases is the "manifest error" standard. In the Matter of H.M.M., 33,766 (La.App. 2 Cir. 3/7/00), 754 So.2d 425.
It is well-settled that a court of appeal may not set aside a trial court's findings of fact in the absence of "manifest error," which in its simplest terms means "clearly wrong." Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Nevertheless, when an appellate court finds that a reversible error of law or manifest error of material fact has been made in the trial court, the reviewing court is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). In Interest of E.C.B., 691 So.2d 687 at 690, 29,725 [(La.App. 2 Cir. 1/29/97)].

Analysis
Appellant alleges in his first assignment of error that the trial court erred in failing to dismiss the petition of adoption of O.L.G. because it contained inconsistent statements, false swearing and fraud perpetrated on behalf of the petitioners. Specifically, appellant urges that the petitioners falsely swore that the biological father of O.L.G. was unknown, when, in fact, both M.E. and the petitioners knew that the appellant was the biological father of the child.
We observe that there are conflicting statements and testimony in the record regarding M.E.'s and the petitioners' knowledge of the biological father. Some of these statements are also inconsistent with allegations in the original petition. However, we also note that the petitioners subsequently amended their petition regarding their lack of knowledge of the biological father of the child and alleged the existence of a valid acknowledgment of paternity executed by the appellant. Regarding the petitioners' allegation in the petition that the biological father of O.L.G. is unknown, there were in fact conflicting and inconsistent statements by M.E. in this regard. Although the petitioners might have strongly suspected that the appellant was the father of O.L.G. when they filed their petition alleging that the biological father of O.L.G. was unknown, M.E.'s admission that she had been with multiple sex partners around the time of conception rendered anyone's claim of paternity uncertain absent DNA testing.
We find no merit in the appellant's claim that the trial court should have dismissed the petition based upon these inconsistencies. Since the purpose of a trial is to prove the truth of the allegations *324 of a petition, the trial court committed no error.
Appellant's second and third assignments of error allege that the trial court erred in terminating the parental rights of the appellant and in finding that the appellant did not establish that he is willing and able to maintain his parental responsibilities to the minor child.
In its oral reasons for judgment, the court found that M.E. and J.M. had a consensual, non-marital [sexual] relationship in which M.E. became pregnant. She told the appellant that he was the father of the child. The court noted that J.M. told his family: "I'm going to have a baby." The court found that J.M. took no actions to prove or disprove that he was the father of the child. He did not show that he provided financial support during the pregnancy, or contributed to the medical expenses of the pregnancy before or after the birth of the child, or that he frequently and consistently visited the child after birth and that he was now willing to assume legal and physical care of the child. The court observed that if J.M. was, in fact, unsure that he was the father of O.L.G., then he could have easily taken measures to determine if he was or was not the father of the child.
The court concluded that J.M. did not prove a "substantial commitment" to the child as required by law, finding that the evidence offered by J.M. did not rise to the level necessary to carry his burden of proof.[1] J.M. did not provide support for M.E. or the child during the pregnancy or after the child was born up to the time of trial, and he did not see the child until after the first one and one-half years of the child's life, although at the time of the hearing J.M. was now seeing the child on a regular basis. J.M. admitted that he has never volunteered to do anything for the child.
The court also found that J.M. did not show that he had been thwarted in his efforts by the mother or her agents to manifest a parental commitment to O.L.G. Finally, the court noted that the appellant has not established that he could independently support the child and carry out the role of a parent based upon his present status.
As noted above, to successfully oppose the adoption in this case, Article 1138(A) requires that the appellant must first establish his parental rights by (1) acknowledging that he is the father of the child and (2) by proving that he has manifested a substantial commitment to his parental responsibilities and (3) that he is a fit parent of his child. The trial court concluded that the appellant did not meet elements (2) and (3) in this instance.
There is no question that the appellant executed an acknowledgment of paternity on June 13, 2001. Accordingly, the first element of Article 1138(A) was met.
Paragraph B of Article 1138 establishes what showing constitutes proof that the appellant manifested a substantial commitment to his parental responsibilities. Paragraph B(1) requires that the alleged father demonstrate that he has provided financial support to the mother or child and has established personal contact with the child. This responsibility attaches before birth for prenatal costs and the expenses of delivery if the father has knowledge of the mother's pregnancy.
*325 La. Ch. C. art. 1138 B; Malek v. Yekani-Fard, 422 So.2d 1151 (La.1982).
Our review of the record supports the trial court's finding that the appellant did not demonstrate that he provided financial support to the mother or child during the pregnancy and after the child was born. Appellant attempted to justify his lack of support during this time by claiming that he did not know if he was the father of the child. Appellant later admitted, however, that M.E. told him when she was pregnant that he was the father of the child. Appellant's mother testified that the appellant was happy when M.E. was pregnant and said, "I am going to have a baby." She also testified that J.M. accepted that O.L.G. was his child and was proud of it. As the trial court noted, even if M.E. had cast some doubt in the appellant's mind as to his paternity, appellant could have taken some steps to determine the truth but failed to do so.
After the child was born, appellant still failed to offer financial support for the child, nor did he make any effort whatsoever to establish parental contact with the child, let alone frequent and regular contact. Appellant testified that he did not know where the child lived for the first year and one-half of her life. In fact, the child lived with the appellant's aunt, Sherry Smith, from age 4 months until 1½ years. Smith testified that appellant knew the child was living with her, but he told her he did not want to see the child because he did not think she was his child. Smith also testified that the appellant never provided any kind of support. Appellant did not rebut this testimony, but testified that he did not recall being told that O.L.G. lived with his aunt.
Even after June 13, 2001 when he signed the acknowledgment of paternity, and the child, now 1½ years old, was in the legal custody of the McLarrins, appellant made no effort for a period of several months to see the child. Appellant claimed that this continued lack of commitment was because he was still not sure that the child was his own. He stated that it was not until the results of the blood/DNA tests in early 2003 confirming his paternity that he felt a commitment to his parental responsibility. By this time, O.L.G. was nearly 4 years old.
The trial transcript reveals that appellant's memory was extremely poor regarding the facts necessary to establish his commitment to the child. Appellant could not remember giving any monetary support to M.E., his aunt or the McLarrins to support the child. He claimed that he bought her things she needed, "diapers here and there," but he could not remember other things or when or how old the child was when he bought her things. By contrast, M.E. testified that the appellant never provided any support and never bought diapers or anything for her or the child. Appellant admitted that he has never offered to assist M.E. or the adoptive parents in supporting O.L.G.
Paragraph B(2) recognizes that a willing father might be blocked in his efforts to establish a parental relationship. In this instance, however, appellant could recall only one instance in which he was thwarted in an effort to see the child. On this occasion, the child had to go to the doctor.
Based on this record, we conclude that the trial court's findings that the appellant failed to meet his burden of showing a substantial commitment to O.L.G. through financial support during and after M.E.'s pregnancy, and by establishing frequent and consistent contact with the child, are reasonably supported by the record and are therefore not manifestly erroneous. The appellant failed to grasp the opportunities to assume the responsibilities of parenthood *326 as they were presented to him. In re Adoption of B.G.S., supra.
The trial court also found that the appellant was not able to assume legal and physical care of the child based upon his minimum wage income of $5.40 per hour and the fact that he lives with his grandmother. Inasmuch as we have concluded that the record supports the trial court's finding that appellant failed to carry his burden of showing that he seized his parental opportunity interest, we need not reach the question of his present fitness for custody.
Finally, appellant argues that the trial court erred in failing to declare the voluntary act of surrender for adoption invalid because it contains false statements regarding knowledge of the biological father. This alleged error constitutes a collateral attack on the veracity of statements contained in a document in the record, and was not raised at trial. Since it does not constitute a part of the judgment appealed from, nor was this issue raised at trial, this assignment will not be considered by the court.

Conclusion
We conclude that the trial court was not manifestly erroneous in concluding that the appellant failed to establish his parental rights and decreeing that appellant's parental rights are terminated. La. Ch. C. art. 1138(D). The judgment denying appellant's opposition to the adoption and terminating his parental rights is therefore affirmed.
AFFIRMED.
NOTES
[1] The court stated in its oral reasons that it applied the standard of "clear and convincing evidence." The court's remarks taken as a whole, however, indicate that the court was simply saying that it would require "clear and convincing evidence" before it would determine that the father had not met his burden and terminate his parental rights.