STATE OF LOUISIANA IN THE INTEREST OF R.M. AND R.M.

        \*

NO. 2025-CA-0604

        \*

COURT OF APPEAL

        \*

FOURTH CIRCUIT

        \*

STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2024-317-01-VS, SECTION "SECTION E"
HONORABLE Desiree Cook-Calvin, JUDGE
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge Rachael D. Johnson)

Jules A. Fontana, III
DEPARTMENT OF CHILDREN & FAMILY SERVICES
Bureau of General Counsel
1450 Poydras Street, Suite 1600
New Orleans, LA 70112

     COUNSEL FOR APPELLANT, DEPARTMENT OF CHILDREN
     AND FAMILY SERVICES

Nzinga Hill
Jacob McCarty
ORLEANS PUBLIC DEFENDERS
2601 Tulane Avenue, Suite 700
New Orleans, LA 70119

     COUNSEL FOR APPELLEE, M.M.

**VACATED AND REMANDED**

**DECEMBER 30, 2025**

This is an appeal from a judgment of the Orleans Parish Juvenile Court finding that M.M. established his parental rights under La. Ch. C. art. 1138 after the mother executed a voluntary act of surrender of the twins, R.M. and R.M. For the reasons that follow, we find that the present record is insufficient to allow meaningful review of the independent statutory requirement of parental fitness. We therefore vacate the judgment and remand for a full, new hearing consistent with this opinion.

### FACTS AND PROCEDURAL HISTORY

On July 11, 2023, N.M. ("Mother"), gave birth to fraternal twins, R.M. and R.M. At one month old, the twins entered the custody of the Department of Children and Family Services (the "DCFS") after the female child suffered severe and permanent injuries while in Mother's care, including a skull fracture, multiple long-bone fractures, and brain trauma. She required hospitalization until October 2023 and now resides in a therapeutic foster home. The male twin, after an initial relative placement disrupted, has remained in a certified foster home since April 2, 2024. Because of their distinct needs, the twins live in separate foster placements.

Mother initially identified R.R. as the children's father. On October 26, 2023, the court ordered the DCFS to provide DNA testing. On March 28, 2024, the DCFS informed the court that the DNA results showed that R.R. was not the father of the children. Despite the negative paternity test results, Mother continued to insist that R.R. was the father of the children.

Mother subsequently identified two other men, T.P. and M.M., as possible fathers. Paternity tests were scheduled for June 6, 2024, but due to repairs at the testing facility, the tests were rescheduled for July 25, 2024. At the hearing conducted on August 22, 2024, the court was informed that DNA testing had not been conducted. The court issued subpoenas to T.P. and M.M. commanding them to be present at the next hearing scheduled on October 24, 2024.

M.M. and T.P.'s father appeared at the October 24, 2024 hearing. T.P.'s father informed the court that T.P. was incarcerated. During the hearing, T.P., through his father, and M.M. were informed that they were potential fathers of the children. This was the first notice M.M. received that he was a potential father. DNA testing of M.M. was scheduled on November 14, 2024.

On November 4, 2024, Mother executed a voluntary surrender of her parental rights as to each of the children. M.M. arrived late at the testing center for his November 14, 2024 appointment, and testing was rescheduled for February 10, 2025. The results, which confirmed paternity, were returned in March of 2025.

M.M. was served with notice of filing of surrender on April 10, 2025, notifying him of the surrender executed by Mother. He immediately acknowledged paternity, requested custody, and began visitation with the children. On April 24, 2025, M.M. filed a written objection to surrender and adoption.

2

A contradictory hearing was conducted on M.M.'s objection to surrender and adoption on May 23, 2025. At the conclusion of the hearing, the juvenile court found that M.M. established his parental rights and declared that no adoption may be granted without his consent. A judgment to this effect was signed on June 20, 2025. The DCFS appealed.

## ASSIGNMENTS OF ERROR

The DCFS assigns three errors to the juvenile court's judgment that essentially assert that the juvenile court erred in finding that that M.M. established his parental rights and declaring that no adoption may be granted without his consent.[1]

## STANDARD OF REVIEW

A juvenile court's factual findings in a termination of parental rights proceeding are reviewed under the manifest error standard. *State ex rel. A.T.*, 06-501, p. 5 (La. 7/6/06), 936 So.2d 79, 82-83; *State in Int. of B. H.*, 24-46, p. 9 (La. App. 3 Cir. 5/1/24), 388 So.3d 471, 477. A *de novo* review is necessary when the juvenile court misapplies the law and the only issue is a question or finding of law. *State in Interest of G.S.*, 19-0605, p. 5 (La. App. 4 Cir. 12/4/19), 287 So.3d 752, 756 (citing *State in Interest of K.C.C.*, 15-1429, p. 4 (La. 1/27/16), 188 So.3d 144, 146). However, an appellate court can remand an action for proper consideration

---

[1] The DCFS sets forth its assignments of error as follows:

1. The Juvenile Court improperly concluded that M.M. proved a "substantial commitment to his parental responsibilities".

2. The Juvenile Court improperly concluded when the duty begins for the alleged father's "substantial commitment to his parental responsibilities" failing to accurately assess when this duty begins.

3. The Juvenile Court improperly concluded that the father was thwarted in his attempt to manifest his parental commitment by the mother or her agents.

when the record is so incomplete that the court is unable to pronounce definitely on the issues presented or where the parties have failed, for whatever reason, to produce available evidence material to a proper decision. La. C.C.P. art. 2164; *Southern Trace Property Owners Assn. v. Williams*, 50,992, pp. 15-16 (La. App. 2 Cir. 11/23/16), 210 So.3d 835, 844-45.

## DISCUSSION

Louisiana Children's Code art. 1138 sets forth an alleged father's burden at the hearing on his opposition to a surrender:

> A. At the hearing of the opposition, the alleged or adjudicated father must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child.
>
> B. Proof of the father's substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother's pregnancy or the child's birth, that he either:
>
> (1) Provided financial support, including but not limited to the payment of consistent support to the mother during her pregnancy, contributions to the payment of the medical expenses of pregnancy and birth, or contributions of consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that he is now willing and able to assume legal and physical care of the child.
>
> (2) Was willing to provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.

Thus, in order to establish his parental rights under the statutory scheme, the alleged father must prove: (1) acknowledgment of the child; (2) manifestation of a substantial commitment to his parental responsibilities; and (3) fitness to parent. *In*

4

*re Adoption of S.C.D.*, 99-455, p. 4 (La. App. 5 Cir. 9/28/99), 742 So.2d 1058, 1060. All three of these elements must be met in order to establish one's parental rights. *In re Applying for Priv. Adoption C.J.P.*, 54,460, p. 8 (La. App. 2 Cir. 4/13/22), 337 So.3d 186, 192. The substantial commitment requirement is defined in Article 1138(B) and begins "in accordance with [the father's] means and knowledge of the mother's pregnancy or the child's birth."

"Parental fitness" is defined in Children's Code article 1103(5):

> "Parental fitness" means:
>
> (a) That a parent has not abused the child....
>
> (b) That a parent has consistently offered to provide reasonably necessary food, clothing, appropriate shelter, or treatment for the child....
>
> (c) That a parent suffers from no medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse, or chemical dependency which makes him unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.
>
> (d) Viewed in its entirety, the parent's past or present conduct, including his criminal convictions, would not pose a risk of substantial harm to the physical, mental, or emotional health of the child.

The juvenile court found M.M. to be a fit parent to his children, but the record contains inadequate or no evidence of the following: his home environment; financial stability or child-support capability; protective capacity or risk factors; ability to meet the female twin's extensive medical needs; parenting or psychological evaluations; or CASA or DCFS recommendations. This evidentiary gap is especially significant given the female child's lifelong medical impairments. The lack of evidence prevents meaningful appellate review. Under *Southern Trace*,

when a factual record is inadequate to assess a required statutory element, remand is the appropriate remedy. *Id.,* 50,992, pp. 15-16, 210 So.3d at 844-45.

## CONCLUSION

For the following reasons, we vacate the juvenile court's decision and remand for a full, new hearing consistent with this opinion.

**VACATED AND REMANDED**