GARRETT, J.
Lin this suit to collect homeowners association dues, both parties appeal from a trial court ruling which partially granted an exception of prescription. The lower court ruled that all dues, except those arising within two years of the filing of the suit, had prescribed. The defendant/ homeowner contends that the court should have also ruled that all past and future assessments are extinguished, whereas the plaintiff/homeowners association complains that the court erred in ruling that any dues were prescribed. For the reasons outlined below, we reverse and vacate the trial court judgment and remand for further proceedings.
INTRODUCTION
At first blush, this case appears simple. What is the prescriptive period for failure to pay homeowners association dues in a residential subdivision regulated by covenants and restrictions? After carefully reviewing this record, which is completely devoid of any evidence, we find that the judgment rendered below must be vacated. Wherever the burden of proof may have been in this case, no one met it. Further, the scant legal authority provided below failed to apprise the trial court of significant developments in our law and relevant jurisprudence. This case must be remanded for the development of a more complete record because the prescription issue cannot be resolved in the abstract.
FACTUAL AND PROCEDURAL BACKGROUND
Charles Williams owns property in Southern Trace Subdivision in Shreveport. On September 15, 2014, the Southern Trace Property Owner’s Association (“STPOA") filed suit entitled “Petition for Payment of Dues” against Williams. The suit alleged that Williams’s property is burdened by a | ¡/‘Declaration of Protective Covenants, Conditions and Building Restrictions,” enforced by the plaintiff, a Louisiana nonprofit corporation. The suit claimed that he owed unpaid dues in the amount of $15,529.71 and requested a money judgment against Williams. STPOA asserted that it had “properly assessed dues as set forth in Exhibit A” and made amicable demand, “as set forth in Exhibit B.” However, neither exhibit is found in the appellate record. STPOA also demanded interest, costs of filing liens, attorney fees, and all court costs as “[p]er the governing restrictions.”
In his answer, Williams admitted he was a property owner and that there existed “Declaration of Protective Covenants, Conditions and Building Restrictions which are not uniformly enforced.” He claimed dues were not allowed by the declaration.
Williams next filed peremptory exceptions of prescription and no cause of action. He contended that all but three years of dues had prescribed under the prescriptive period provided in La. C.C. art. 3494 for open accounts and that the plaintiff had no cause of action against him. He asserted that the subdivision covenants provided only for assessments, i.e. maintenance charges, and not for dues. In a brief in opposition to the exceptions, STPOA attached affidavits from two long-term board *838 members, who attested that STPOA used the terms “dues” and “assessments” interchangeably, and that both meant the dollar amounts each lot was assessed for “common expenses, i.e., security, street maintenance, landscaping, utility maintenance, etc.” They further attested that Williams’s lot had been assessed dues since he purchased it and that he benefited from the services provided by STPOA and funded by the dues. With regard to the defendant’s prescription argument, the plaintiff countered that the | ..¡prescriptive period would only commence with the latest assessment and thus none had prescribed. A hearing on the exceptions was held on February 9, 2015. The minutes show that the attorneys appeared in court and argued the exceptions. Apparently, no evidence was taken on the prescription issue. The trial court later denied both exceptions.[1]
Williams then filed another answer and a reconventional demand. He admitted that he had not paid the “so-called assessed dues” because they were not owed. He alleged that, since June 2008, he had not received any updates, invoices, or STPOA minutes and he had not been included in the official homeowners’ directory given to residents. Alleging no maintenance had been made on his property, he claimed he received no benefit from any maintenance performed in the subdivision. Additionally, Williams alleged no uniformity in enforcement and he was “picked out” by STPOA for the present lawsuit.
In his reconventional demand, Williams claimed that STPOA owed him $36,577.25 for services rendered for security equipment, replacement of a termite-infested fence, landscaping damage, and his time in developing, managing and maintaining security, payroll and billing for the security program. In response, STPOA asserted it never hired Williams to provide any services, it was never invoiced for the same, and any amounts allegedly due were prescribed.
The matter was initially set for trial on June 2, 2015, then reset to September 3, 2015. Following the August 2015 death of Williams’s 14attorney, new counsel enrolled. Thereafter, trial was reset for January 14, 2016.
In October 2015, Williams’s new counsel filed peremptory exceptions of no right of aetion/no cause of action and abandonment/prescription/ peremption and motion to cancel lien. Contrary to the position adopted by the defendant in his first exception of prescription (i.e., the dues were subject to the three-year open account prescriptive period), the defendant completely reframed the issue. He now argued that the assessments were made pursuant to building restrictions, and that the two-year prescriptive period in La. C.C. art. 781 applied. He also called into question the efficacy of a lien filed on December 10, 2007, although the plaintiff had not sought to enforce the lien. Furthermore, he argued that, pursuant to La. C.C. art. 781, his lot was now completely freed of the obligation ever to pay any dues. The new exceptions were set for hearing on January 11, 2016, but at Williams’s request, they were reset for the day of trial.
On January 14, 2016, the parties appeared for trial, and both sides announced ready. However, the trial court decided to take up first the pending exceptions. The parties did not introduce any evidence and *839 instead just presented arguments to the court.
Williams argued that La. C.C. art, 781 should be applied as written to free his lot of the restrictions completely and nothing was owed. Alternatively, he contended that, pursuant to Brier Lake, Inc. v. Jones, 97-2413 (La. 4/14/98), 710 So.2d 1054, all but the last two years of assessments should be deemed prescribed. STPOA countered that res judicata applied due to the prior ruling on the prescription exception and the court should not reconsider the issue due to the law of the case doctrine. It | ¿further asserted that Brier Lake had been legislatively overruled by Acts 1999, No. 309. STPOA sought application of the 10-year prescriptive period of La. C.C. art. 3499. Williams urged that the only portion of Brier Lake legislatively overruled was its holding that subdivisions required unanimous consent to change their restrictions. He maintained that Brier Lake’s, holding establishing a two-year prescriptive period—not a 10-year one— was still applicable.[2] Unfortunately, neither lawyer brought to the attention of the trial court significant changes that have been made to our statutory law and jurisprudence arising after the Brier Lake case. Furthermore, no evidence was introduced by either side, and there was no discussion on the record as to which side bore the burden of proof on the prescription issue.
At the conclusion of the argument, the trial court granted in part the exception of prescription and ruled that STPOA’s claims were prescribed except for any assessments due within two years of the filing of the suit. The trial court held that the two-year prescriptive period of La. C.C. art.; 781 was applicable because “I have nothing to the contrary.” The trial court did not adopt Williams’s position that all obligations were extinguished. A query was made on the record about writs being taken from the ruling. The trial was then continued pending review of the ruling by this Court. A judgment was later signed, which set a return date for writ applications and | ¿which also certified the judgment as an appealable judgment.[3] Both sides appealed.
LAW OF THE CASE/ RES JUDICATA
As a preliminary matter, STPOA argues that Williams was precluded from asserting another exception of prescription following the denial of the first exception. STPOA relies on the law of the case doctrine and res judicata. We reject both arguments.

Law

A peremptory exception may be urged at any time. La. C.C.P. arts. 928, 2163. A party may re-urge a peremptory exception after a denial of the exception. Teachers’ Retirement Sys. of La. v. Louisiana State Employees’ Retirement Sys., 456 So.2d 594 (La. 1984); G.B.F. v. Keys, 29,006 (La.App. 2 Cir. 1/22/97), 687 So.2d 632, writ denied, 97-0385 (La. 3/21/97), 691 So.2d 94; Herrera v. Beatrice Gallegos & *840 US Agencies Cas. Ins., 14-935 (La. App. 5th Cir. 10/28/15), 178 So.3d 164.
The denial of a peremptory exception of prescription is an interlocutory judgment, not a final judgment. Hence, the doctrine of res judicata does not apply. Eastin v. Entergy Corp., 07-212 (La. App. 5th Cir. 10/16/07), 971 So.2d 374, writ denied, 2007-2214 (La. 1/11/08), 972 So.2d 1167.
The law of the case refers to a policy by which the court will not reconsider prior rulings in the same case. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971); J-W Operating Co. v. Olsen, 49,925 (La.App. 2 Cir. 6/24/15), 167 So.3d 1123.
|7The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue. Petition of Sewerage and Water Bd. of New Orleans, 278 So.2d 81 (La. 1973). However, even when applicable, the law of the case is discretionary and should not be applied where the error is palpable and the application would result in injustice. Arceneaux v. Amstar Corp., 2010-2329 (La. 7/1/11), 66 So.3d 438; J-W Operating Co. v. Olsen, supra.

Discussion

Williams’s first exception of prescription was denied. Thus, it was an interlocutory judgment and not subject to res judicata. Furthermore, the law of the case doctrine is discretionary. Since Williams could have re-urged his first exception again had he so wished, it stands to reason that he was not precluded from filing a second exception on different grounds. Accordingly, we reject STPOA’s contention that the second exception should not have been considered.
PRESCRIPTION
As previously noted, STPOA argues that the trial court should have ruled that none of the dues were prescribed while Williams maintains that it should have held that all of the dues were prescribed.

IsPeremptory Exception

A party urging an exception of prescription has the burden of proving facts to support the exception, unless the petition is prescribed on its face. Cichirillo v. Avondale Industries, Inc., 2004-2894 (La. 11/29/05), 917 So.2d 424. However, if prescription is evident from the face of the pleadings, the plaintiff will bear the burden of showing an action has not prescribed. Johnson v. Allen, 2014-0490 (La. App. 4th Cir. 1/7/15), 158 So.3d 852.
Evidence may be introduced to support or controvert any objection pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. In the absence of evidence, an exception of prescription must be decided upon the facts alleged in the petition with all allegations accepted as true. Cichirillo, supra.
All that must be considered on the peremptory exception of prescription is whether there is sufficient evidence to show that the alleged time period has run under the requirements of the particular code article involved. The trial court need not go into the merits of the case. Sanders Family, LLC No. 1 v. Sanders, 46,476 *841 (La.App. 2 Cir. 12/14/11), 82 So.3d 434, writ denied, 2012-0414 (La. 4/9/12), 85 So.3d 702.
In this case, the trial court and the parties did not discuss which side had the burden of proof on the prescription issue. The petition in this case only set forth a lump sum amount that was due. No dates were alleged. In our view, the burden of proof on the prescription issue seemingly remained on the defendant because the petition was not clearly prescribed on its face such that the burden would shift to the plaintiff. Nevertheless, wherever the burden may have been, neither party satisfied it as explained below.

|⅜Building Restrictions

Before 1977, building restrictions were a creature of the jurisprudence; the Civil Code did not specifically address them. Diefenthal v. Longue Vue Found., 2002-1470 (La. App. 4th Cir. 1/7/04), 865 So.2d 863, writ denied, 2004-0366 (La. 4/2/04), 869 So.2d 883. In 1977, the Legislature enacted La. C.C. arts. 775 through 783, regarding building restrictions. See La. Acts 1977, No. 170, effective January 1, 1978. In 1999, significant changes were made to our laws, which will be discussed, infra.
Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. The plan must be feasible and capable of being preserved. La. C.C. art. 775. Building restrictions may impose on owners of immovables affirmative duties that are reasonable and necessary for the maintenance of the general plan. La. C.C. art. 778.
Of interest in the instant case is La. C.C. art. 781, which addresses violation of building restrictions:
No action for injunction or for damages on account of the violation of a building restriction may be brought after two years from the commencement of a noticeable violation. After the lapse of this period, the immovable on which the violation occurred is freed of the restriction that has been violated.
In 1979, the legislature amended Chapter 1 of Code Title I of Code Book II of Title 9 of the Revised States by adding Part III, which was entitled “Privileges on Immovables for Charges or Dues of Association of Owners” and contained La. R.S. 9:1145 to 9:1148.[4] These statutes granted | madditional remedies by establishing a privilege on behalf of homeowners associations against the lot and improvements of a homeowner who failed to pay charges, expenses or dues and set forth the procedure for its enforcement against the delinquent homeowner. La. R.S. 9:1147 provides:
A recorded sworn statement shall preserve the privilege against the lot or lots and improvements thereon for a period of five years after the date of recordation. The effect of recordation shall cease and the privilege preserved by this recordation shall perempt unless a suit to enforce the privilege is filed within five years after the date of its recor-dation and a notice of the filing of such suit is filed in the mortgage records of the parish in which the subdivision is located.
Against this statutory background, the Louisiana Supreme Court decided the Brier Lake case in 1998. Suit was brought by a homeowners association on the basis that a homeowner had violated the subdivision restrictions and also failed to pay dues and assessments. Two separate issues were presented for resolution. As to the ques *842 tion of whether a majority of lot owners in a subdivision could amend existing building restrictions to make them more restrictive, the supreme court held that unanimous consent of all lot owners was required.
The second issue concerned the prescriptive period for filing suit to collect delinquent dues and assessments. The defendant homeowner argued that the assessments were building restrictions and pled the two-year prescriptive period of La. C.C. art. 781. The court of appeal ruled that the assessments were a personal obligation subject to the 10-year prescriptive period of La. C.C. art. 3499. The supreme court reversed that holding. It concluded that the obligation was a building restriction subject to the two-year period of La. C.C. art. 781.[5] Accordingly, it held that the homeowner |nwas not obligated to pay assessments that were due over two years when suit was filed.[6]
During the next legislative session, the legislature passed Act 309, which was specifically designed to overrule Brier Lake. The act stated that “[t]he provisions of this Act legislatively overrule the case of Brier Lake, Inc. v. Jones, 97-C-2413 (La. 4/14/98); 710 So.2d 1054, are remedial, and shall apply both prospectively and retroactively.” See Acts 1999, No. 309. The Louisiana Homeowners Association Act (“LHAA”), consisting of La. R.S. 9:1141.1 to 9:1141.9, was enacted. The act also amended La. C.C. arts. 776 and 780 (regarding amendments and termination of building restrictions, which no longer require unanimous consent) and 783 (regarding conflicts with the LHAA and the Louisiana Civil Code). The LHAA legislation provides for building restrictions in a “residential planned community” or “planned community.” The legislation emphasizes the importance of “community documents,” building restrictions and them enforcement. Under the statutory scheme, the community documents prevail over any conflicts with the Louisiana Civil Code articles on building restrictions.
La. R.S. 9:1141.2 defines “community documents” as:
the articles of incorporation, bylaws, plat, declarations, covenants, conditions, restrictions, rales and regulations, or other written instruments, including any amendment thereto, by which the association has the authority to exercise any of its powers to manage, maintain, or otherwise affect the association property or which otherwise govern the use of association property.
La. R.S. 9:1141.3(A) provides:
The provisions of this Part shall be applicable to existing and future residential planned communities whose declarations have been duly executed and filed for registry. However, this Part shall not be construed to affect the validity or superiority of any provision of a 112community document. Only to the extent the community documents are silent shall the provisions of this Part apply.
La. R.S. 9:1141.4 provides:
The existence, validity, or extent of a building restriction affecting any association property shall be liberally construed to give effect to its purpose and intent.
*843 La. R.S. 9:1141.5(B) provides:
Such building restrictions may include the imposition of an affirmative duty, including the affirmative duty to pay monthly or periodic dues or fees, or assessments for a particular expense or capital improvement, that are reasonable for the maintenance, improvement, or safety, or any combination thereof, of the planned community.
La. R.S. 9:1141.8 provides:
The community documents of residential planned communities shall have the force of law between the homeowners association and the individual lot owners and as between individual lot owners. The remedies for breach of any obligation imposed on lot owners or the association shall include damages, injunctions, or such other remedies as are provided by law.[7]
La. R.S. 9:1141.9 provides:
In addition to any other remedies provided by law or by the community documents for nonpayment of assessments, a homeowners association as defined in this Part may utilize the provisions of Part III of this Chapter establishing a privilege on lots of delinquent owners for nonpayment of assessments.
Significantly, La. C.C. art. 783 was also amended to provide as follows:
Doubt as to the existence, validity, or extent of building restrictions is resolved in favor of the unrestricted use of the immovable. The provisions of the Louisiana Condominium Act, the Louisiana Timesharing Act, and the Louisiana Homeowners Association Act shall supersede any and all provisions of this Title[8] in the event of a conflict.
| isThus, under the new statutory scheme, the LHAA supersedes the articles of the Louisiana Civil Code. Under the LHAA, the community documents provide the starting place for determining the rights and obligations between the parties.
Following the rendition of Brier Lake and the passage of Acts 1999, No. 309, several appellate cases have addressed the issue of prescription in the context of homeowners association dues and assessments. To our knowledge, none have found the two-year period of La. C.C. art. 781 to be applicable. Some of these cases did not even mention the Brier Lake case.
In Lakewood Estates Homeowner’s Ass’n, Inc. v. Markle, 2002-1864 (La. App. 4th Cir. 4/30/03), 847 So.2d 633, writ denied, 2003-1511 (La. 9/26/03), 854 So.2d 362, a homeowners association sought to enforce liens against property for the nonpayment of assessments from 1997 to 2001. The defendant homeowners argued their assessment dues were prescribed under La. C.C. art. 781, 782 and 783, and, due to the homeowners association’s failure to comply with its Act of Establishment for more than 10 years, any real rights associated with the Act of Establishment were dissolved. However, with little discussion, the court held that La. C.C. art. 781 and 782[9] were inapplicable to the payment of dues and fees and that the LHAA superseded La. C.C. art. 783. No mention was made of Brier Lake.
In Eastover Prop. Owner’s Ass’n, Inc. v. Cochrane, 2002-1502 (La. App. 4th Cir. *844 5/21/03), 848 So.2d 710, writ denied, 2003-1604 (La. 11/21/03), 860 So.2d 544, a property owners association filed suit against homeowners who had failed to pay association dues and assessments for |useveral years. The court rejected the homeowners’ contention that the two-year prescriptive period of La. C.C. art. 781 was applicable. In so ruling, it looked to the terms of the subdivision’s act of restriction, which set forth the nature of the assessments as being personal to the owners of the property. Because it was a personal obligation, the 10-year prescriptive period of La. C.C. art. 3499 applied. Again, Brier Lake was not mentioned.
In Louisiana Bureau of Credit Control, Inc. v. Landeche, 2008-1099 (La.App. 3 Cir. 3/4/09), 6 So.3d 935, the homeowners association assigned to a collection agency the defendant’s delinquent assessments account.[10] The defendant filed an exception based on three years under the open account law in the civil code, which was sustained by the trial court. The plaintiffs argument that the 10-year prescriptive period was applicable was not reached on appeal because the assessment sued upon had not been properly passed by the homeowners association. Brier Lake was cited in passing in a discussion of whether the assessment was a building restriction or a personal obligation. Also of relevance was the court’s finding that LHAA only applied when the homeowners association’s community documents were silent.
Although prescription was not an issue in Fern Creek Owners’ Ass’n, Inc. v. City of Mandeville, 2008-1694 (La.App. 1 Cir. 6/30/09), 21 So.3d 369, the appellate court recognized that the LHAA has superseded the civil code and acknowledged the importance of the community documents affecting the subdivision.
hJn all of these cases, the courts had before them and carefully considered the provisions of the pertinent homeowners association articles of incorporation and other community documents. This critical evidence is completely missing in this case.

Discussion

As previously explained, the second peremptory exception of prescription was initially set for hearing several days before trial. However, the matter was upset and rescheduled for the day of trial. The parties appeared on that day and, prior to the commencement of trial, the exception was taken up.
Counsel for both sides presented oral arguments on the exception, which have been detailed above. During the hearing, counsel for Williams twice stated that he would like to offer and introduce into evidence various documents.[11] However, these documents were not introduced and do not appear in the appellate record. Thus, on this record, we find there is a complete failure of proof on the prescription issue. As explained above, under the new statutory scheme, the starting place would be the community documents, which govern the rights and obligations between the parties. This record is completely devoid of any of this.
In the interest of justice, an appellate court can remand for proper consider *845 ation when the record is so incomplete that the court is unable to pronounce definitively on the issues or where parties have failed, for whatever reason, to produce available evidence material to a proper Jjjdecision. La. C.C.P. art. 2164; Doucet v. Lafourche Par. Fire Prot. Dist. No. 3, 589 So.2d 517 (La. App. 1st Cir. 1991).
This case obviously has consequences not just for Williams, but also for the numerous other residents of Southern Trace. Arguably, the decision eventually rendered in this case will have ramifications for other homeowners associations with similar community documents. Consequently, it behooves both the lower court and us to have the most complete record possible in order to fully review this issue.
As a result, we reverse and vacate the judgment rendered below. We remand this matter to the trial court for further proceedings. The trial court is directed to conduct a hearing at which evidence shall be taken. See La. C.C.P. art. 931. Alternatively, the parties may agree to defer the issue to the merits of the trial. This evidence shall include any and all documents necessary to determine the relevant restrictions on the property at issue, including the covenants particular to the subdivision and Williams’s deed, as well as any other documents. Aided by this evidence, the trial court may then fully consider the applicable law and resolve the issue.
CONCLUSION
The trial court judgment is reversed and vacated, and the matter remanded for further proceedings. Costs of this appeal are assessed to the parties equally.
REVERSED, VACATED AND REMANDED.
CARAWAY, J., dissents with written reasons.

. None of the transcripts of the argument or the ruling are contained in the appellate record. It appears from statements made in court during the argument on the second set of exceptions that the trial court accepted that the three-year open account prescriptive period applied and that prescription had been interrupted.

. STPOA cited Tri-State Sand & Gravel, L.L.C. v. Cox, 38,217 (La.App. 2 Cir. 4/7/04), 871 So.2d 1253, writ denied, 2004-1357 (La. 9/24/04), 882 So.2d 1144, to the trial court for the proposition that this circuit had held that Brier Lake was legislatively overruled. However, in Tri-State Sand & Gravel, the court quoted dicta from Brier Lake regarding who could sue to enforce building restrictions. In a footnote, the court stated that Brier Lake had been legislatively overruled and then outlined the specific changes made by the legislation before noting that none of those changes affected the portion it cited.

. We pretermit, as unnecessary, any discussion of whether the partial judgment rendered below was properly certified as a final, ap-pealable judgment.

. None of these four statutes have ever been amended.

. At one point in the opinion, the supreme court incorrectly referred to “the two-year prescriptive period of La. C.C. art. 775”; however, that article contains no prescriptive period. The reference is obviously a typographical error.

. While the court applied the first sentence of La C.C. art. 781, it did not discuss the effect of the second sentence, which extinguishes the restriction after the lapse of the two-year period.

.We note that STPOA's original petition sought attorney fees, interest and costs. Presumably, the basis for these is contained in the community documents. This is but one example of how the community documents can provide for recovery of amounts beyond those contained in the statutory law.

. This refers to Title V, Building Restrictions, which contains La. C.C. arts. 775 to 783.

. La. C.C. art. 782 deals with termination of building restrictions by abandonment.

. Williams cited this case to the trial court during argument as indicating that La. C.C. art. 781 was applicable.

. During his argument, Williams’s attorney stated, “At this point I would like to offer and introduce into evidence the petition of the plaintiffs as well as .. .what will be entered in evidence as our Exhibit No, 11 which is a copy of the lien that Mr. Thompson referred to.” At a later juncture, he stated, “I guess I would also like to offer into evidence the public records concerning the restrictions and covenants for Southern Trace. ..."