Judgment rendered September 25, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,653-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SOUTHERN TRACE PROPERTY                    Plaintiff-Appellant
OWNER'S ASSOCIATION

versus

CHARLES WILLIAMS                           Defendant-Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 579552

Honorable Ramon Lafitte, Judge

* * * * *

ROBERT I. THOMPSON, III                    Counsel for
                                           Plaintiff-Appellant

THE PESNELL LAW FIRM                       Counsel for
By: William Alan Pesnell                   Defendant-Appellant

* * * * *

Before PITMAN, GARRETT, STONE,
McCALLUM, and BLEICH (*Ad Hoc*), JJ.

STONE, J., dissents with written reasons.

**BLEICH, J. (*Ad Hoc*)**

This is an action to collect homeowners association dues. Both parties have appealed from the trial court's judgment which granted in part an exception of prescription filed by the delinquent homeowner, Dr. Charles Williams, and granted in part the relief sought by the homeowners association, Southern Trace Property Owners Association ("STPOA"). For the reasons set forth below, we reverse in part, amend in part, and, as amended, affirm.

## FACTS AND PROCEDURAL HISTORY

STPOA filed this action against Dr. Williams on September 15, 2014, seeking the payment of past-due homeowners association dues. Dr. Williams filed an answer and an exception of prescription wherein he asserted that La. C.C. art. 781 bars all recovery sought by STPOA in this case. Dr. Williams also filed a reconventional demand seeking reimbursement for funds expended and services rendered allegedly on behalf of and/or authorized by the homeowners association.

At the initial trial of the exception, the parties submitted the matter without introducing any evidence. Based upon the arguments of the parties, the trial court granted in part the exception of prescription filed by Dr. Williams based upon the court's finding that the two-year prescriptive period for building restrictions set forth in La. C.C. art. 781 applied as a bar to STPOA's claim for recovery of all association dues that had accrued more than two years prior to the date STPOA filed its petition seeking to recover the unpaid dues.

STPOA appealed the adverse judgment. This Court vacated the judgment and remanded for further proceedings, directing that the trial court conduct a hearing at which evidence "includ[ing] any and all documents necessary to determine the relevant restrictions on the property at issue, including the covenants particular to the subdivision and Dr. Williams's deed, as well as any other documents." Alternatively, this Court noted that the parties could agree to defer the issue to the merits of the trial. *See, Southern Trace Property Owners Ass'n v. Williams*, 50,992 (La. App. 2 Cir. 11/23/16), 210 So. 3d 835.[1]

On remand, at a hearing held on September 28, 2017, the parties introduced evidence, which included the subdivision covenants. The trial court's judgment, which was rendered on March 29, 2018, and signed on May 21, 2018, granted in part the exception of prescription filed by Dr. Williams as to all dues that had accrued more than two years prior to September 15, 2014, the date that STPOA's petition had been filed, and rendered judgment in favor of STPOA, awarding it "assessment dues from two (2) years prior to the petition being filed, September 15, 2014, to date," together with interest thereon until paid. The trial court further granted an exception of prescription filed by STPOA as to claims for damages filed by Dr. Williams, which were dismissed with prejudice.[2] As noted above, both parties have appealed from this judgment.

---

[1] This Court's previous opinion provides a more extensive factual and procedural background of this matter (for the time period up until the remand). *See, Southern Trace Property Owners Ass'n*, 210 So. 3d at 837-39.

[2] This part of the trial court's judgment was not appealed by either party; therefore, it will not be discussed further and is part of the judgment that is affirmed herein.

## DISCUSSION

In its appeal, STPOA has assigned as error: (1) the trial court's determination that the two-year prescriptive period for an action for damages for the violation of a building restriction set forth in La. C.C. art. 781 was applicable rather than the ten-year prescriptive period applicable to personal obligations provided by La. C.C. art 3499; and (2) the trial court's failure to award attorney fees to STPOA. Dr. Williams' assignments of error are that: (1) the trial court erred in ignoring the second sentence of La. C.C. art. 781, which provides "[a] building restriction that is not enforced within two years of a noticeable violation thereof is extinguished as to the property in violation of the building restriction." According to Dr. Williams, his obligation to pay homeowners dues was extinguished by operation of law and he therefore is not liable for any assessments or dues; or, alternatively, (2) the trial court erred in calculating the amount of the assessments he owes by including dues for years neither pled in STPOA's petition nor proven by the evidence presented; and, (3) the principal amounts that Dr. Williams owes are subject to 12% annual interest rather than the 18% annual interest provided for in the STPOA community documents.

### *Applicable Prescriptive Period*

The two prescriptive statutes cited by the parties are La. C.C. art. 781, which applies solely to an action for a violation of a building restriction, and La. C.C. art. 3499, which applies to all personal actions that are not specifically addressed by other legislative enactments.

Louisiana C.C. art. 781 provides:

> No action for injunction or for damages on account of the
> violation of a building restriction may be brought after two

3

years from the commencement of a noticeable violation. After the lapse of this period, the immovable on which the violation occurred is freed of the restriction that has been violated.

Louisiana C.C. art. 3499 provides:

Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.

Building restrictions, or "restrictive covenants" as they are generally known in the common law and occasionally termed in Louisiana, are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. La. C.C. art. 775; *Fern Creek Owners' Ass'n, Inc. v. City of Mandeville*, 08-1694 (La. App. 1 Cir. 06/30/09), 21 So. 3d 369.

The Louisiana Homeowners Association Act, La. R.S. 9:1141.1, *et seq.* ("the LHAA"), became effective June 16, 1999. Acts 1999, No. 309. It applies to existing and future residential planned communities such as Southern Trace whose declarations have been duly executed and filed for registry. La. R.S. 9:1141.3(A). The LHAA does not affect the validity or superiority of any provision of a community document and applies only to the extent that community documents are silent. *Id.*

Louisiana R.S. 9:1141.2(3) defines "Community Documents" as:

the articles of incorporation, bylaws, plat, declarations, covenants, conditions, restrictions, rules and regulations, or other written instruments, including any amendment thereto, by which the association has the authority to exercise any of its powers to manage, maintain, or otherwise affect the association property.

The statutory scheme established by the LHAA mandates that community documents prevail over the LHAA, except to the extent that community documents are silent. The LHAA also amended La. C.C. art. 783 to provide that the [LHAA] "shall supersede any and all provisions

4

of . . . Title [V. Building Restrictions] in the event of a conflict." *Fern Creek Owners Ass'n, Inc., supra* at 377.

La. R.S. 9:1141.5(B) provides that building restrictions may include the imposition of an affirmative duty, including the affirmative duty to pay monthly or periodic dues or fees, or assessments for a particular expense or capital improvement, that are reasonable for the maintenance, improvement, or safety, or any combination thereof, of the planned community. *See also*, La. C.C. art. 778, which provides that building restrictions may impose on owners of immovable affirmative duties that are reasonable and necessary for the maintenance of the general plan.

Prior to the enactment of the LHAA, the Louisiana Supreme Court decided *Brier Lake, Inc. v. Jones*, 09-2413 (La. 04/14/98), 710 So. 2d 1054. In that case, a homeowners association filed suit, claiming that the defendant homeowner had violated subdivision restrictions and also failed to pay dues and assessments. On the issue of whether a majority of lot owners in a subdivision could amend existing building restrictions to make them more restrictive, the supreme court found that unanimous consent of all lot owners was required. The second issue in *Brier Lake* was the prescriptive period for filing suits to collect delinquent dues and assessments. Like Dr. Williams in the instant case, the defendant homeowner asserted that the assessments were building restrictions and as such, were subject to the two-year prescriptive period set forth in La. C.C. art. 781. Agreeing with the homeowners association's argument, the trial court found that the assessments were a personal obligation subject to the 10-year prescriptive period of La. C.C. art. 3499. The supreme court reversed, finding that the

5

obligation was instead a building restriction subject to the two-year period of La. C.C. art. 781. Therefore, the defendant homeowner was only obligated to pay assessments that were due within two years from when suit was filed.[3]

This Court observed, in *Southern Trace Property Owners Ass'n*, 210 So. 3d at 842:

> During the next legislative session, the legislature passed Act 309, which was specifically designed to overrule *Brier Lake*. The act stated that "[t]he provisions of this Act legislatively overrule the case of *Brier Lake, Inc. v. Jones*, 97-C-2413 (La. 04/14/98), 710 So. 2d 1054, are remedial, and shall apply both prospectively and retroactively." *See* Acts 1999, No. 309. The Louisiana Homeowners Association Act ("LHAA"), consisting of La. R.S. 9:1141.1-9:1141.9, was enacted. The act also amended La. C.C. arts. 776 and 780 (regarding amendments and termination of building restrictions, which no longer require unanimous consent) and 783 (regarding conflicts with the LHAA and the Louisiana Civil Code). The LHAA legislation provides for building restrictions in a "residential planned community" or "planned community." The legislation emphasizes the importance of "community documents," building restrictions and their enforcement. Under the statutory scheme, the community documents prevail over any conflicts with the Louisiana Civil Code articles on building restrictions.

Following the rendition of *Brier Lake, supra*, and the passage of Acts 1999, No. 309, there have been several appellate cases addressing the issue of prescription in the context of homeowners association dues and assessments. None of these have found the two-year period of La. C.C. art. 781 to apply. *Southern Trace Property Owners Ass'n*, 210 So. 3d at 843. This Court's analysis of these cases is set forth below:

> In *Lakewood Estates Homeowner's Ass'n, Inc. v. Markle*, 2002-1864 (La. App. 4th Cir. 04/30/03), 847 So. 2d 633, *writ denied*, 2003-1511 (La. 09/26/03), 854 So. 2d 362, a homeowners

---

[3] As noted by this Court in *Southern Trace Property Owners Ass'n, supra* at 842, fn. 6, the supreme court in *Brier Lake* did not discuss the effect of the second sentence of article 781, which extinguishes a lapsed building restriction after two years.

association sought to enforce liens against property for the nonpayment of assessments from 1997 to 2001. The defendant homeowners argued their assessment dues were prescribed under La. C.C. art. 781, 782 and 783, and, due to the homeowners association's failure to comply with its Act of Establishment for more than 10 years, any real rights associated with the Act of Establishment were dissolved. However, with little discussion, the court held that La. C.C. art. 781 and 782 were inapplicable to the payment of dues and fees and that the LHAA superseded La. C.C. art. 783. No mention was made of *Brier Lake*.

In *Eastover Prop. Owner's Ass'n, Inc. v. Cochrane*, 2002-1502 (La. App. 4th Cir. 05/21/03), 848 So. 2d 710, *writ denied*, 2003-1604 (La. 11/21/03), 860 So. 2d 544, a property owners association filed suit against homeowners who had failed to pay association dues and assessments for several years. The court rejected the homeowners' contention that the two-year prescriptive period of La. C.C. art. 781 was applicable. In so ruling, it looked to the terms of the subdivision's act of restriction, which set forth the nature of the assessments as being personal to the owners of the property. Because it was a personal obligation, the 10-year prescriptive period of La. C.C. art. 3499 applied. Again, *Brier Lake* was not mentioned.

In *Louisiana Bureau of Credit Control, Inc. v. Landeche*, 2008-1099 (La. App. 3 Cir. 03/04/09), 6 So. 3d 935, the homeowners association assigned to a collection agency the defendant's delinquent assessments account. The defendant filed an exception based on three years under the open account law in the civil code, which was sustained by the trial court. The plaintiff's argument that the 10-year prescriptive period was applicable was not reached on appeal because the assessment sued upon had not been properly passed by the homeowners association. *Brier Lake* was cited in passing in a discussion of whether the assessment was a building restriction or a personal obligation. Also of relevance was the court's finding that LHAA only applied when the homeowners association's community documents were silent. . . .

In all of these cases, the courts had before them and carefully considered the provisions of the pertinent homeowners associations articles of incorporation and other community documents. . . .

*Southern Trace Property Owners Ass'n, supra* at 843-44.

On December 1, 1987, Southern Trace, a Limited Partnership, filed a

"Declaration of Protective Covenants, Conditions, and Building Restrictions

7

and Grants of Servitudes" ("Covenants") establishing the Southern Trace

District, which includes the Southern Trace Property Owners Association.

These Covenants have been supplemented several times over the years.

The Southern Trace Covenants specify that, as used therein, these

terms, *inter alia,* have the following meanings:

> 1.3    "Association" shall mean that automatic-membership,
> Louisiana non-profit corporation made up of Owners and called
> the Southern Trace Property Owners Association, Inc.
>
> 1.7    "Common Area" shall mean all immovable property
> (including    but not limited to the utility and other
> improvements thereon and servitudes), streets and right-of-
> ways owned, held or maintained by the Association for the
> common use and enjoyment of the Owners and occupants of
> Lots and Units.
>
> 1.16    "Lot" shall mean a lot or parcel of land in the Southern
> Trace District, with the exception of Common Area and
> Community Common Elements, as shown upon the latest
> recorded subdivision plat.
>
> 1.17    "Member" shall mean an Owner of a Lot or Unit in the
> Southern Trace District who is accordingly a member of the
> Association, including Declarant.
>
> 1.19    "Owner" shall mean the Person, including the Declarant, or if
> more than one, all Persons collectively, who hold fee simple title of
> record to a Lot or Unit in the Southern Trace District . . .
>
> 1.21    "Southern Trace District" shall mean the property described on
> Exhibit "A" attached hereto and any other immovable property which
> hereafter becomes subject to this Declaration.
>
> 1.24    "Unit" shall mean (i) a Lot improved by a single family
> dwelling . . .

Section 3.1 of the Covenants provides:

> **Members.**  The Country Club and every Owner of a Lot or
> Unit shall be a Member of the Association which Declarant is
> causing to be formed concurrently with this Declaration.  With
> respect to the Owners, membership shall be appurtenant to and
> may not be separated from ownership of any Lot or Unit.

Section 5 of the Covenants provides for Assessments. Subsection 5.1

provides in pertinent part (with emphasis added):

**Imposition and Collection.**
A. There may be imposed, assessed or charged against each Lot and Unit within the Southern Trace District, by the Board and in favor of the Association, maintenance charges (hereinafter sometimes collectively referred to as "Maintenance Assessment") and special assessments ("Special Assessments") for capital Improvements. Such Maintenance Assessment and Special Assessments shall be imposed, payable and collected as provided in this Article 5. The Maintenance Assessment, Special Assessments and any other charges or assessments imposed hereunder shall create a fund to be known as the "Maintenance Fund."

B. *Each Owner of a Lot or Unit* and the Country Club Land, by acceptance of title thereto whether or not it shall be so expressed in such deed or other conveyance, *is deemed to covenant and agree to pay to the Association all Maintenance Assessments and any other assessments or charges hereby levied against such Owner*. The Maintenance Assessments and any other assessments or charges hereby levied, together with such interest thereon and cost of collection thereof as hereinafter provided, shall be a charge on the Lots, Units and Country Club Land and shall be a continuing lien and privilege upon the property as to which each such Maintenance Assessment or other assessment or charge is made.

C. *Any Maintenance Assessment or Special Assessment not paid within thirty (30) days after the due date shall bear interest from the due date at the lesser of (i) the rate of eighteen percent (18%) per annum or (ii) the maximum rate permitted by law*. The Association *may bring an action at law against the Owner personally obligated* or Country Club, as applicable, to pay the same or foreclose the above described lien and privilege against the Owner's Lot or Unit or Country Club, as applicable, to pay the same or foreclose the above described lien and privilege against the Owner's Lot or Unit or Country Club Land, as provided below. Once any Maintenance Assessment or Special Assessment or any portion thereof has become delinquent, the Association may file a notice of same in the records of the Clerk of Court for Caddo Parish, Louisiana. *A real obligation, lien and privilege as herein provided for such Maintenance Assessment shall attach simultaneously as the same shall become due and payable. The real obligation, lien and privilege of such Maintenance Assessment or Special Assessment shall include any late charge established by the Board, interest on the principal amount due at the above*

9

*described past due interest rate, all costs of collection (including reasonable attorney's fees and court costs)* and any other amounts provided or permitted hereunder or by law. In the event that the Maintenance Assessment or Special Assessment remains unpaid after sixty (60) days from the original due date, the Association may as the Board shall determine, institute suit to collect such amounts and to foreclose its lien and privilege. *The real obligation, lien and privilege provided for in this Section 5.1 shall be in favor of the Association, and by acceptance of title to a Lot or Unit, each Owner vests in the Association and its agents the right and power to bring all actions against the Person for the collection of such Maintenance Assessments or Special Assessments as a debt* and/or to foreclose the aforesaid lien and privilege in the same manner as other liens and privileges relating to the improvement of immovable property. The Country Club also vests in the Association and its agents the right and power to bring all actions against the Country Club for the collection of such Maintenance Assessments or Special Assessments as a debt and/or to foreclose the aforesaid lien and privilege in the same manner as other liens and privileges relating to the improvement of immovable property. The Association shall have the power to bid on the Lot or Unit or Country Club Land, as applicable, at any foreclosure sale and to acquire, hold, lease, mortgage and convey the same.

In the instant case, when Dr. Williams purchased his home in Southern Trace, he purchased it subject to the prior recorded Covenants and had, *at the very least*, constructive notice of their provisions, and that they burdened his property. In fact, Dr. Williams acknowledged that the Covenants burden his property (and thus personally obligate him to pay maintenance assessments) in the answer he filed to the petition filed by STPOA.

Dr. Williams initially paid the maintenance assessments, then ceased doing so, apparently, as alleged in his answer, because "there was a total lack of consideration for any amount allegedly owed because no maintenance was made on [Dr. Williams'] property, [Dr. Williams] got no benefit from any maintenance anywhere in the subdivision[;] [t]he

10

subdivision restrictions have not been enforced by SOUTHERN TRACE[;] and [the] dues and/or assessments have not been uniformly assessed and collected."

As did the Fourth Circuit in *Eastover Prop. Owner's Ass'n, Inc., supra,* we find that the community documents in the instant case clearly establish the nature of the Maintenance and Special Assessments as being personal to the owners of Lots and Units in Southern Trace. Subsection 5.1(C) provides that the Association may bring an action at law ***against the Owner personally obligated*** to pay any Maintenance Assessment or Special Assessment not paid within 30 days after the due date. Subsection 5.1(C) ***additionally*** provides for the ***simultaneous attachment of a real obligation, lien and privilege*** as the Maintenance Assessment becomes due and payable. Thus, the trial court erred in applying the two-year prescriptive period set forth in La. C.C. art. 781. Because the obligation to pay homeowners dues and assessments under the Covenants in this case is personal, the applicable prescriptive period is the ten-year period provided by La. C.C. art. 3499.[4]

---

[4] We specifically conclude that the prescriptive period enunciated in La. C.C. art. 781 is patently inapplicable to a personal obligation. The personal obligation of the defendant was clearly set forth in the adopted law between the parties, the ***Community Documents***. There was ***nothing ambiguous*** in the Community Documents that a personal obligation of the lot owner was created. The term "***owner***" was set forth ***multiple times*** therein.

>Noteworthy is the official Revision Comment (b) to art. 781:
>***
>(b) Actions to enjoin or to obtain damages for any violation of **building restrictions** are subject to a two-year liberative prescription that begins to run upon the commission of a violation. This prescription does not merely bar actions for the enforcement of building restrictions as *sui generis* real rights; it extinguishes the **real right** itself in the same way that the prescription of nonuse extinguishes the right of a servitude. Accordingly, any action based on **principles of property law** would become without object after the completion of the two-year prescriptive period.

A common sense analysis indicates the rationale for this conclusion. Restrictions generally prohibit the use of property for certain uses (e.g. commercial activity), or for

We therefore reverse that part of the trial court's judgment granting the exception of prescription filed by defendant Charles Williams as to all dues that had accrued more than two years prior to September 15, 2014, the date that STPOA filed the instant action.

### *Amount of Maintenance Fees and Interest Due*

In its petition, filed on September 15, 2014, plaintiff STPOA alleged that defendant Charles Williams, the owner of property in Southern Trace burdened by a Declaration of Protective Covenants, Conditions and Building

---

constructing buildings/improvements outside of certain parameters (e.g. square footage requirements). *Cf. Fern, supra.* These are obviously prohibitions **against** certain activities on and with property.

Personal obligations oftentimes co-exist with real obligations, whether extant or contingent. (E.g., a promissory note secured by a mortgage; a tax obligation potentially enforceable by liens on immovable property.) Common sense dictates that protection afforded a potential creditor, bolstering his/its ability to collect a delinquent personal debt, does not alter the essence of a debt.

The legislature, by enacting La. R.S. 9:1141.5, contemplated the possibility of a different type covenant provision in labeling dues and assessments as something only an owner can personally perform; it recognized this as different from a restriction or prohibition concerning the use of land.

B. Such building restrictions **may include** the **imposition** of an *affirmative duty*, including the **affirmative duty to pay monthly or periodic** *dues* **or fees, or** *assessments* for a particular expense or capital improvement, that are reasonable for the maintenance, improvement, or safety, or any combination thereof, of the planned community.

The legislature highlighted the different nature of this personal obligation, vis-à-vis prohibited land use, by using language, not in the context of prevention or prohibition, but as something affirmative "to do":

The only logical conclusion that may be drawn from simple statutory interpretation is that the legislature considered "dues . . . fees . . . assessments" as personal obligations.

To conclude other than we have, *i.e.* the inapplicability of C.C. art. 781, to an **affirmative duty**—something only a person can do—thus a personal obligation, would lead to a myriad of possibilities creating the most absurd results, including encouraging owners to personally dishonor legitimate financial obligations, all to the detriment of other property owners. To adopt the notion that the items, "dues...fees...assessments", are somehow real obligations would ignore the legislature's common sense intent in distinguishing these from restrictive prohibitions.

12

Restrictions, has unpaid homeowners assessments as reflected in Exhibit A, which are enforced by plaintiff STPOA, and that "[d]efendant [Charles Williams] owes plaintiff the sum of FIFTEEN THOUSAND FIVE HUNDRED TWENTY-NINE AND 71/100 ($15,529.71) DOLLARS, as shown by Exhibit A, attached hereto." STPOA's prayer for relief was that there be judgment against Dr. Williams in favor of STPOA in the amount of $15,529.71, for past due homeowners dues, together with legal interest, attorney fees and all costs. STPOA neither attached an "Exhibit A" nor filed one into the record of this matter and never filed a supplemental or amending petition to seek additional homeowners assessments.[5]

At the trial of this matter, which was held on September 28, 2017, STPOA introduced Exhibit P-2, a statement prepared by the association administrator on September 26, 2017. Not only did this statement reflect the total amount alleged to be due as of the date of its preparation, $26,068.50 (which, as noted in fn. 4 will not be awarded since the petition was not properly amended), it shows that STPOA did not keep separate the past-due assessments and the "finance charges" it assessed on the amounts due. For example, the statement shows that, as of the date of judicial demand, September 15, 2014, the $15,529.71 sought by STPOA as "homeowners

_____

[5] Since STPOA did not amend its petition to seek additional assessments past the date of the petition, as noted by defense counsel at the trial of this matter, this Court will not expand the pleadings to make such an award. *Compare Eastover, supra* at 711, wherein court noted that the homeowners association filed suit seeking past due assessments and late fees, then three years later, filed a supplemental and amending petition seeking the payment of past due assessments and late fees from the homeowners that had accrued since the filing of the original petition; and *English Turn Property Owner's Ass'n, Inc. v. Short*, 16-0460 (La. App. 4 Cir. 11/30/16), 204 So. 3d 672, 677, wherein the court noted that "[a] plain reading of the original petition indicates that the ETPOA did not limit its demand for assessments to those which were owed at the time it filed its petition." Specifically, the homeowners association sought "a judgment for not only the association fees . . . which have accrued to date, but also for the unpaid fees and charges . . . accruing after the filing of this petition and until the judgment is rendered."

assessments" was in fact assessments plus "Finance Charges." Of the $15,529.71, only $9,336 was actually past-due assessments. The rest was "finance charges" as Ms. Thompson, STPOA's administrator testified, or 18% interest from the date that each assessment became due as set forth in the Covenants.

What the Covenants actually provide is "[a]ny Maintenance Assessment . . . not paid within thirty (30) days after the due date shall bear interest from the due date **at the lesser of** (i) the rate of eighteen percent (18%) per annum or (ii) the maximum rate permitted by law." Under Louisiana law, the amount of conventional interest cannot exceed twelve percent (12%) per annum. La. R.S. 9:3500(C)(1); *English Turn Property Owner's Ass'n, Inc., supra.* STPOA is thus entitled to an award of past-due assessments in the amount of $9,336, together with 12% interest on each unpaid assessment (for the period January 1, 2005, through September 15, 2014) from the date that each assessment became due until paid. As noted by this Court in *Doerle Food Services, L.L.C. v. River Valley Foods, L.L.C.*, 52,601 (La. App. 2 Cir. 05/22/19), 273 So. 3d 656, 665, judicial interest will not be awarded thereon, inasmuch as judicial interest in addition to the contractual interest allowed by La. C.C. art. 2000[6] is not permissible under Louisiana law. The trial court's judgment will be amended accordingly.

### *Attorney Fees*

Attorney fees are not recoverable except when authorized by contract or by statute. *Rivet v. State, Dept. of Transportation and Development*, 96-

---

[6] La. C.C. art. 2000 provides that when the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500.

0145 (La. 09/05/96), 680 So. 2d 1154; *General Motors Acceptance Corp. v. Meyers*, 385 So. 2d 245 (La. 1980). In general, a successful litigant may recover attorney fees when specifically provided for by contract. *Imperial Dry Cleaners & Laundry, Inc. v. Imperial Carpet Cleaning & Sales, Inc.*, 29,421 (La. App. 2 Cir. 04/02/97), 693 So. 2d 830; *Curtis v. Curtis*, 28,698 (La. App. 2 Cir. 09/25/96), 680 So. 2d 1327. The award of attorney fees must be reasonable based upon the degree of skill and work involved in the case. *Imperial Dry Cleaners & Laundry, Inc., supra*; *United Building Co. v. Harp*, 25,852 (La. App. 2 Cir. 06/22/94), 639 So. 2d 349.

Counsel's right to an award of attorney fees in this collection suit arises out of Subsection 5.1(C) of the Covenants, which provides for, *inter alia*, reasonable attorney fees and court costs. The trial court did not make such an award, but this Court will, considering the factors set forth in Rule 1.5 of the Rules of Professional Conduct for determining the reasonableness of a fee to be awarded to STPOA for having to employ an attorney to collect the unpaid maintenance assessments, together with the affidavit submitted by Attorney Thompson setting forth his time (104.35 hours through October 12, 2017) and requested hourly rate ($300 per hour). As noted by this Court in *Jackson Square Towne House Home Ass'n, Inc. v. Hannigan*, 38,239 (La. App. 2 Cir. 03/03/04), 867 So. 2d 960, a court, in awarding attorney fees, is not bound by the amount actually charged by the attorney.

The Rule 1.5 factors include (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and the character of the work involved; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of

appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. *Rivet, supra* at 1161.

Considering the above factors, we note that the facts of this case were not intricate or complex, although the law in this area is not well settled. Counsel for STPOA has prevailed on the primary issues in this case, the prescriptive period applicable and therefore the nature of its action against defendant Charles Williams to collect past-due maintenance assessments. Attorney Thompson also obtained the full amount of the maintenance assessments sought in the petition he filed on behalf of his client, notwithstanding the fact that the interest on this sum will be reduced in light of the recalculation to be made in accordance with the terms of the Covenants.

What cannot be ignored in this analysis is the fact that this case was lengthy and drawn out when it arguably could have been disposed of in half the time had the attorneys been better prepared, primarily by providing proper documentation in support of their factual and legal assertions to both the trial and appellate courts the first time around, thus negating the need for this case to make another round through the court system. Attorney Thompson has asked this Court to award him an attorney's fee of $31,305 (not including the amount he is requesting for work done in connection with the instant appeal); we note, however, that the amount of past-due maintenance assessments (exclusive of interest) being awarded to STPOA herein is less than one-third of that amount.

Considering the above factors, the detailed affidavit submitted by Attorney Thompson, and the facts and circumstances of this case, we feel that an award of $8,000 is a reasonable attorney's fee for counsel's work, both at the trial and appellate levels. We will also award STPOA the expenses and costs sought in counsel's affidavit, which total $2,225.97.

## CONCLUSION

For the reasons set forth above, that part of the trial court's judgment granting in part the exception of prescription filed by defendant, Charles Williams, is reversed.[7] That part of the trial court's judgment awarding plaintiff, Southern Trace Property Owners Association, assessment dues from two (2) years prior to the petition being filed, September 15, 2014, to date, plus interest at the rate of eighteen percent (18%) due from the due date to payment, is amended to award assessment dues for the period beginning January 1, 2005, through September 15, 2014, together with 12% interest on each unpaid assessment from the date that each assessment became due until paid.[8] That part of the trial court's judgment granting the exception of prescription filed by plaintiff, Southern Trace Property Owner's Association, and dismissing all claims filed by defendant, Charles Williams, is affirmed.

It is hereby ORDERED, ADJUDGED, and DECREED that plaintiff, Southern Trace Property Owners Association, is awarded attorney fees in the amount of $8,000 and costs in the amount of $2,225.97. Costs of this appeal are assessed against defendant, Charles Williams.

---

[7]Having addressed in this opinion issues raised by Dr. Williams in a peremptory exception of peremption and prescription filed with this Court on April 5, 2019, these exceptions are hereby **overruled and dismissed**.

[8] *See* Discussion p. 13.

**REVERSED IN PART; AMENDED IN PART, AND AS AMENDED, AFFIRMED.**

**STONE, J., Dissenting Opinion**

## INTRODUCTION

This case presents two possible outcomes, one that gives Mr. Williams a windfall at the expense of his neighbors, and one that does not. The first possible outcome is that STPOA is time-barred from collecting approximately 12 years of unpaid homeowners' association assessments from Mr. Williams and, prospectively, is barred from assessing such dues against the subject lot and/or its owner. Such would give Mr. Williams a "free ride" at the expense of his neighbors for those 12 years and indefinitely into the future. The prospective aspect of that windfall would inure to the benefit of any subsequent owner of the property as well. That result, admittedly, would be inequitable as between Mr. Williams and his neighbors. The second possible outcome is for the court to, in effect, rule that Mr. Williams does not get a "free ride" at the expense of his neighbors – neither in the past nor the future.

The majority has chosen the second outcome. However, that decision is, of necessity, based on an erroneous interpretation of the community documents.

## DISCUSSION

The majority correctly begins its analysis from the premise that the community documents are the law between the homeowners association and the individual lot owners. However, the majority overlooks a key aspect of the community documents as a source of law: such law is created unilaterally by a private party (the subdivision developer) and is binding on the subject lots and on people who purchase those lots--regardless of

whether or not they know of or consent to those "laws." In short, subdivision developers have the power to unilaterally create legally binding personal obligations on the part of lot owners. In my research, I have found no reference to another instance wherein a private actor has such power.[1] That power is an aberration and must be curtailed by strict construction of the community documents in favor of the lot owners.

Additionally, La. C.C. art. 2056 provides that an ambiguity in a written contract is interpreted against the party who furnished its text, unless the ambiguity can be resolved without resorting to such win-lose means. This principle of La. C.C. art. 2056 applies *a fortiori* to the interpretation of community documents, and in this case, requires that the Maintenance Assessment be classified as a building restriction.

Section 5.1 of the STPOA community documents, in relevant part, provides:

A. ***There may be…charged against each Lot… Maintenance charges*** (hereinafter sometimes collectively referred to as "Maintenance Assessment"). Such maintenance assessment…shall be imposed, payable and collected as provided in this Article 5.

B. Each owner of a Lot… By acceptance of title thereto whether or not it shall be so expressed in such deed or other conveyance, is deemed to covenant and agree to pay the Association Maintenance Assessments… ***The Maintenance Assessments… shall be a charge on the lots***… and shall be a continuing lien and privilege upon the property…

C. … The association may bring an action at law against the owner personally obligated… to pay [the Maintenance

---

[1] *See, e.g.*, § 1.6. Sources of obligations, 5 La. Civ. L. Treatise, Law of Obligations § 1.6 (2d ed.)

Assessment] or foreclose the above-described lien and privilege against the Owner's Lot… A real obligation, lien and privilege as herein provided for such Maintenance Assessment… shall attach simultaneously as the same shall become due and payable. The real obligation, lien and privilege of such Maintenance Assessment… shall include any late charge [interest, collection costs, etc.]… The real obligation, lien and privilege provided for in this Section 5.1 shall be in favor of the Association, and by acceptance of title to a Lot… Each owner vests in the Association… The right and power to bring all actions against the Person for the collection of such Maintenance Assessments… as a debt and/or to foreclose the aforesaid lien and privilege… (Emphasis added).

***

Section 5.7, in relevant part, states:

***The Maintenance Assessments levied herein shall become effective as to all assessed lots***…on the first day of the month… However, failure by the board to fix the Maintenance Assessment… for any year shall not be deemed a waiver with respect to any of the provisions of this Declaration or a release of the liability of any member to pay such Maintenance Assessment. (Emphasis added).

In pertinent part, Section 5.10 provides:

[T]he lien and privilege granted by law ***to secure*** any Maintenance Assessment… provided for herein shall be subordinated [to other enumerated liens or mortgages]. (Emphasis added).

Both supplemental STPOA community documents (i.e., those executed and filed years after to the original community documents), in relevant part, state:

7.8. <u>Maintenance Assessments</u>. ***Assessments provided for in the Declaration shall become effective as to that assessed lot***… only on the first day of the month following the conveyance of that Lot… to a Class A Member."[2] (Emphasis added).

---

[2] The "Declaration" as used therein, is defined as follows "1.7 <u>Declaration</u> shall mean (i) that certain Declaration of Protective Covenants, Conditions and Building Restriction and Grants of Servitudes and Destinations of the Owner of the Southern Trace District by Southern Trace, Ltd. Partnership, recorded on December 1, 1987, in the conveyance records of Caddo Parish, Louisiana under clerk's file number 116-7960 and (ii) any juridical act imposing covenants, conditions and restrictions, servitudes and/or

3

The STPOA community documents do refer to the lot owner as being "personally obligated" to pay the Maintenance Assessment, and do state that the lot owner is "deemed to covenant and agree" to pay the Maintenance Assessment. The majority holds that this language makes the Maintenance Assessment a personal obligation of the lot owner.

However, as shown by the emphasized language above, the community documents also repeatedly state that the Maintenance Assessment *is* a "charge against the lot," and states that it is the lots themselves that are "assessed" with the Maintenance Assessment. This language establishes that the Maintenance Assessment burdens *the lot itself,* and is therefore a building restriction. Rather than acknowledge that reality, the majority, without explanation, refuses to give effect to that language. It is unclear whether the majority simply ignores this language or conflates it with the distinct provision for a "real obligation, lien, and privilege" securing the maintenance assessment. Either way, the majority accomplishes the exact opposite of what the aforementioned policy consideration and La. C.C. art. 2056 command, *i.e.*, to interpret this ambiguity against STPOA by holding that the Maintenance Assessment is a building restriction and thus is subject to two-year prescription under La. C.C. art. 781.[3]

_____

destinations on the owners and all immovable property with the Southern Trace District, as the same may be amended from time to time and filed of record."

[3] La. C.C. art. 781 provides for the prescription and extinguishment of building restrictions, as follows:

> No action for injunction or damages on account of the violation of the building restriction may be brought after two years from the commencement of a noticeable violation. After the lapse of this period, the immovable on which the violation occurred is freed of the restriction that has been violated.

Moreover, the reference to the lot "owner [being] personally obligated" in the community documents is totally consistent with the nature of a building restriction. "[B]uilding restrictions may include…the affirmative duty to pay monthly or periodic dues or fees…that are reasonable for the maintenance, improvement, or safety, or any combination thereof, of the planned community." La. R.S. 9:1141.5(B).[4] Indeed, Section 5.2 of the original community documents essentially states that the purpose of the Maintenance Assessments is such.[5] Furthermore, a subdivision lot obviously cannot tender payment of the dues assessment itself. Rather, the owner, *i.e.,* the person responsible for satisfying charges on the lot, must do so. This natural, unavoidable reality does not make the owner's obligation to make those payments a "personal obligation" within the technical legal meaning of that phrase.

The majority cites three cases as having addressed the same issue as that involved in this case. However, none of those cases support the majority opinion, and *Louisiana Bureau of Credit Control, Inc. v. Landeche,* 2008-1099 (La. App. 3 Cir. 3/4/09), 6 So. 3d 935, actually supports this dissent.

---

[4] La. C.C. art. 778 provides: "building restrictions may impose on owners of immovables affirmative duties that are reasonable and necessary for the maintenance of the general plan," *e.g.,* personally tendering the payment of homeowner's association dues.

[5] In particular, that provision states:

> Purpose of Maintenance Assessments. Maintenance assessments and Special Assessments levied by the Association shall be used exclusively to promote the recreation, health, safety and welfare of the owners and documents of the Southern Trace District, for the improvement, maintenance and operation of the Common Area, including, without limitation, the maintenance and repair of any private streets within the Southern Trace Project.

The majority is correct that *Landeche* did not hold La. C.C. art. 781 applicable, but fails to mention that such was only because the *Landeche* court did not reach the issue of prescription. Indeed, *Landeche* addressed the same penultimate issue that this court presently faces: whether the Maintenance Assessment was a building restriction or a personal obligation of the lot owner. The community documents stated: "[a]s more fully provided in the Restrictions each member is obligated to pay the Association annual maintenance charges and special assessments for capital improvements which are secured by a continuing lien upon the property against which the assessment is made." *Id*. at 938. Based on that language, the Third Circuit held that the community documents created a building restriction, not a personal obligation of the landowner. *Id.* This court should follow *Landeche*.

The majority also cites *Eastover Property Owners Ass'n. Inc. v. Cochrane,* 2002-1502 (La. App. 4 Cir. 05/21/03), 848 So. 2d 710*, writ denied*, 2003-1604 (La. 11/21/03), 860 So. 2d 544, as having found the dues assessment to be a personal obligation rather than a building restriction, based on the court's interpretation of the community documents, which was, in full, set forth in the opinion as follows:

> [T]he Eastover act of restrictions clearly sets forth the nature of the assessments as being personal to the owners of the property. The last paragraph of Article VII of the act states: "If any member shall fail to pay such dues or assessments when due, the Board of Directors may, in addition to the **personal action** against such member, ..."

*Id.* at 712. Thus, if the *Eastover* community documents contained language to the effect that the assessments were "a charge against the lot," the

6

*Eastover* opinion ignored that language and omitted it from discussion. *Eastover* is distinguishable on that basis.

Furthermore, the majority omits a critical point regarding *Eastover*: therein, the act of sale by which the defendant-owner acquired the subject lot stipulated that "the purchasers accepted the purchase of the lot subject to the Eastover act of restriction." Thus, the defendant-owners in *Eastover* expressly consented, in writing, to be subject to the obligations imposed by the community documents. Therefore the policy concerns evoked by the instant case, discussed *supra*, were not present in *Eastover*. In this case, Mr. Williams' deed to the subject lot is not in evidence and therefore cannot serve to alleviate those concerns.

Finally, the majority cites *Lakewood Estates Homeowner's Ass'n., Inc. v. Markle*, 2002-1864 (La. App. 4 Cir. 04/30/03), 847 So. 2d 633, *writ denied*, 2003-1511 (La. 09/26/03), 854 So. 2d 362. However, that case did not involve a determination of whether the assessments, as set forth in the community documents, were building restrictions or a personal obligation of the lot owner. Furthermore, *Lakewood Estates* seems to assert that, even if the assessment is classified as a building restriction, the prescriptive period of La. C.C. P. art. 781 is nonetheless inapplicable. *Id.* at 639. Such a holding would be erroneous. The majority in this case admits as much.

Based on the foregoing, it is the duty of this court to apply La. C.C. art. 781, which provides:

> No action for injunction or damages on account of the violation of the building restriction may be brought after two years from the commencement of a noticeable violation. *After the lapse of this period, the immovable on which the violation occurred is freed of the restriction that has been violated.* (Emphasis added).

7

**CONCLUSION**

I would affirm the trial court in holding that the Maintenance Assessment in the STPOA community documents is a building restriction and therefore is subject to La. C.C. art. 781. However, the trial court erred in failing to apply the second sentence of La. C.C. art. 781, *supra*. I would amend the trial court judgment so far as necessary to correct that error.